UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Meghan Klein, *as trustee for the heirs and next-of-kin of James Lee Stanback*, | File No. 24-cv-02362 (ECT/JFD) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Menard, Inc., *a foreign corporation licensed to do business in Minnesota*; Joseph Bowser; Jacob Ratliff; Janani Thayalan; Ben Willson; Preston Tuma; John/Jane Doe(s), *any other Co-Employee(s)*; John/Jane Doe(s), *Contractor(s)*; Unknown Shipping Company, | |
| Defendants. | |

Joseph P. Tamburino, Caplan & Tamburino Law Firm, P.A., Minneapolis, MN, for Plaintiff Meghan Klein.

Timothy P. Jung, Brandon D. Meshbesher, and Lauren M. Hoglund, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for Defendants Menard, Inc., Joseph Bowser, Jacob Ratliff, Janani Thayalan, Ben Willson, and Preston Tuma.

Defendant Menard, Inc. removed this wrongful-death case based on diversity of citizenship even though there is not complete diversity. Plaintiff Meghan Klein and all five named individual Defendants share Minnesota citizenship. According to Menard, removal was proper nonetheless because the non-diverse Defendants were fraudulently joined. Ms. Klein disagrees. She has moved to remand the case. The motion will be granted because there is arguably a reasonable basis for predicting that Minnesota law might impose liability on at least three of the non-diverse individual Defendants.

I

Begin with the Parties and their citizenship. Ms. Klein is a Minnesota citizen. *See* Notice of Removal [ECF No. 1] ¶ 17 ("Upon information and belief, Plaintiff is and was at all relevant times a citizen who resides in Hennepin County, Minnesota."); *see also* ECF No. 1-4 ¶ 5 (showing Ms. Klein's address in Maple Grove, Minnesota). Ms. Klein was appointed trustee for the heirs and next-of-kin of her deceased son, James Lee Stanback. Compl. [ECF No. 1-1] ¶ 1; ECF No. 16-5.[1] Mr. Stanback was killed in a work-related incident at Menard's Golden Valley, Minnesota store. Compl. ¶¶ 13, 15. Menard is a Wisconsin citizen. Answer [ECF No. 8] ¶ 2. Like Ms. Klein, the five individual defendants are Minnesota citizens. Notice of Removal ¶ 25. They were Mr. Stanback's coemployees at Menard's Golden Valley store at the time of his death. *Id.* ¶¶ 24–25.

Turn now to the basic allegations surrounding Mr. Stanback's death. Menard hired Mr. Stanback on June 16, 2021. Compl. ¶ 14. At that time, he was nineteen years old. *Id.* ¶ 14. On July 22, 2021, Mr. Stanback was directed to reorganize lumber that had been stacked unsafely. *See id.* ¶ 18. When he attempted to move the lumber with a forklift, the stack fell onto the forklift, crushing him inside the forklift's cage. *Id.* ¶¶ 15, 20. Mr. Stanback had no prior forklift experience. *Id.* ¶ 32. The forklift training he received from

---

[1] "[W]hen a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes." *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) (citing *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 462–66 (1980)); *Steinlage ex rel. Smith v. Mayo Clinic Rochester*, 435 F.3d 913, 914–920 (8th Cir. 2006) ("A Minnesota wrongful death trustee is a representative of a decedent's surviving spouse, next of kin, and certain enumerated creditors, but not a representative of a decedent's estate as required by the plain language of § 1332(c)(2). Accordingly, a Minnesota wrongful death trustee's own state of citizenship controls for purposes of diversity jurisdiction.").

Menard did not comply with regulations promulgated by the Occupational Safety and Health Administration ("OSHA"). *Id.* ¶ 33. The forklift Mr. Stanback used did not meet OSHA standards for conducting work in Menard's lumberyard. *Id.* ¶¶ 34–35.

The Complaint includes six counts, each of which is asserted under Minnesota's wrongful-death statute, Minn. Stat. § 573.0. Count One alleges gross negligence against all Defendants. Compl. ¶ 45. Count Two alleges grossly negligent training against Menard and three of Mr. Stanback's coemployees, Joseph Bowser, Janani Thayalan, and Ben Willson. *Id.* ¶¶ 48–51, 54. Count Three alleges grossly negligent supervision against Menard, Mr. Bowser, Ms. Thayalan, Mr. Willson, and Preston Tuma. *Id.* ¶¶ 57–60, 62. Count Four alleges grossly negligent stacking and storage of lumber against Menard, Mr. Bowser, Mr. Ratliff, Ms. Thayalan, Mr. Willson, John/Jane Doe co-employees, John/Jane Doe contractors, and an unknown shipping company. *Id.* ¶¶ 66–68. Count Five alleges failure to exercise reasonable care in providing a safe place to work against Menard and Ms. Thayalan. *Id.* ¶¶ 71–72. Count Six alleges a survivorship claim against all Defendants under Minn. Stat. §§ 573.01–02. *Id.* ¶ 76. The Complaint seeks compensatory damages "in an amount far in excess of fifty thousand dollars." *Id.*

## II

### A

A civil action pending in state court may be removed to federal court by the defendant when the action could have been filed in federal court originally. *See* 28 U.S.C. § 1441(a). Remand is required under 28 U.S.C. § 1447(c) "when the district court lacks subject matter jurisdiction or the removal was procedurally defective." *St. John v. Int'l*

*Ass'n of Machinists & Aerospace Workers*, 139 F.3d 1214, 1216 (8th Cir. 1998). The party who removed the case bears the burden to show federal subject-matter jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). Here, Menard removed based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1), claiming the non-diverse coemployee Defendants had been fraudulently joined.

"Fraudulent joinder is an exception to the complete diversity rule." *Johnson v. Midwest Div. - RBH, LLC*, 88 F.4th 731, 735 (8th Cir. 2023). "[J]oinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Filla v. Norfolk S. Ry.*, 336 F.3d 806, 810 (8th Cir. 2003) (quoting *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)). "However, if there is a 'colorable' cause of action—that is, if the state law *might* impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder." *Id.* (footnote omitted). It must be "*clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant." *Id.* (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 n.6 (8th Cir. 1977)). As the Eighth Circuit explained in *Filla*,

> the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved. In making such a prediction, the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor.

*Id.* at 811. When uncertain about the state law outcome, courts resolve all doubts in favor of remand. *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007). If the diverse

4

defendant meets its burden of establishing fraudulent joinder, the district court can "assume jurisdiction over a facially nondiverse case temporarily and . . . dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012) (citing *Block v. Toyota Motor Corp.*, 665 F.3d 944, 951 (8th Cir. 2011)).

In adjudicating a fraudulent-joinder question, courts in the Eighth Circuit may consider "material beyond the complaint's allegations to 'determine if there is any factual support' for the claims against the allegedly fraudulently joined defendant." *Toyota Motor Corp.*, 665 F.3d at 948 (quoting *Masepohl v. Am. Tobacco Co.*, 974 F. Supp. 1245, 1250 (D. Minn. 1997)). Here, however, Menard relies on just the Complaint's allegations to demonstrate fraudulent joinder. *See generally* Mem. in Opp'n [ECF No. 23]. For this reason, the Complaint's factual allegations will be accepted as true. *See Filla*, 336 F.3d at 811 (requiring the district court to "resolve all facts . . . in the plaintiff's favor"). Ms. Klein submitted materials in support of her remand motion. *See* ECF Nos. 16, 17. These materials supplement the Complaint's allegations. To the extent reasonably possible, they too will be construed in Ms. Klein's favor.

B

Here, whether there is arguably a reasonable basis for predicting that Minnesota law might impose liability on one or more of the non-diverse coworker defendants turns on Minnesota law governing coemployee immunity. Generally, compensation under Minnesota's Workers' Compensation Act is an employee or survivor's sole remedy for personal injury or death arising in the course of employment. Minn. Stat. § 176.031 ("The

5

liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee . . . ."); *see also McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 833 (Minn. 1995). The Act is intended to strike a compromise between employer and employee. *See* Minn. Stat. § 176.001. In exchange for expedient workers' compensation benefits for a work-related personal injury, an employee gives up other damages claims stemming from the same injury. *See id.*; Minn. Stat. § 176.031. And in exchange for this limited liability, the Act imposes strict liability for workplace injuries on employers. *See* Minn. Stat. §§ 176.001, 176.021, subdiv. 1.

An exception to the Workers' Compensation Act's exclusive-remedy provision applies in cases where a plaintiff brings a claim against a coemployee for injuries stemming from the coemployee's grossly negligent or intentional acts. Minn. Stat. § 176.061, subdiv. 5(e) ("A coemployee working for the same employer is not liable for a personal injury incurred by another employee unless the injury resulted from the gross negligence of the coemployee or was intentionally inflicted by the coemployee."); *see also Ekblad v. Indep. Sch. Dist. No. 625*, 744 F. App'x 325, 327–28 (8th Cir. 2018). Under Minnesota law, "[g]ross negligence is substantially and appreciably higher in magnitude than ordinary negligence . . . [and is] the absence of slight diligence, or the want of even scant care." *Anderson v. Rugged Races, LLC*, 42 F.4th 955, 958 (8th Cir. 2022) (alterations in original) (quoting *State v. Bolsinger*, 21 N.W.2d 480, 485 (Minn. 1946), *overruled on other grounds*, *State v. Engle*, 743 N.W.2d 592 (Minn. 2008)); *see also Olson v. Gausen*, No. A08-1576, 2009 WL 2151182, at *5–6 (Minn. Ct. App. July 21, 2009).

Notwithstanding section 176.061, subdivision 5(e)'s text, a plaintiff seeking to establish the coemployee exception must show more than just a coemployee's gross negligence or intentional act. In *Stringer v. Minn. Vikings Football Club, LLC*, the Minnesota Supreme Court explained that, to satisfy the coemployee exception, a plaintiff must show that a coemployee owed the plaintiff a "personal duty." 705 N.W.2d 746, 755 (Minn. 2005). "To have a personal duty to the injured employee, the coemployee must have (1) taken direct action toward or have directed another to have taken direct action toward the injured employee, and (2) acted outside the course and scope of employment." *Id.* at 757 (citations omitted).

Though the Minnesota Supreme Court has not explicitly defined the concept, "direct action" seems to be "conduct that might reasonably be foreseen to cause injury to" a coemployee. *Wicken v. Morris*, 527 N.W.2d 95, 98 (Minn. 1995). A but-for causal relationship between an employee's injury and a coemployee's acts is not enough. *Id.* at 99. Nor can direct action be shown vicariously. *Id.* at 98 ("A co-employee may be held liable when, through personal fault as opposed to vicarious fault, he breaches a duty owed to plaintiff." (quoting *Dawley v. Thisius*, 231 N.W.2d 555, 557–58 (Minn. 1975))).[2]

---

[2]   Few Minnesota cases address the direct-action element. *Wicken* and *Dawley* are two that do. In *Wicken*, a manager made false statements when he applied for a Department of Natural Resources permit to burn explosive material. 527 N.W.2d at 97. The court held the manager did not owe a personal duty to the workers who were killed by the resulting explosion because applying for a permit was not an act directed toward the injured employees. *Id.* at 99. In *Dawley*, a sheet metal company worker died after falling into a tank of caustic detergent solution. 231 N.W.2d at 556. The court held the company's general manager could have no personal liability for the worker's death absent allegations of "direct negligence toward the [decedent]." *Id.* at 557–58. To be clear, I understand

"Course and scope of employment" share "the same meaning as the course and scope of employment test used to determine whether an employee qualifies for workers' compensation benefits." *Stringer*, 705 N.W.2d at 760. Several seemingly fact-intensive rules govern whether an employee acted within the scope of employment. For example, "[w]hen an employee engages in acts exceeding his authorization, including the violation of an instruction or a rule, he is acting outside the course and scope of his employment." *Id.* at 761 (citing *Bartley v. C–H Riding Stables, Inc.*, 206 N.W.2d 660, 662 (Minn. 1973) and *Lange v. Metro. Airports Comm'n*, 99 N.W.2d 915, 918 (Minn. 1959)). "[T]he performance of prohibited acts is outside the scope of employment and does not come within the protection of the statute." *Id.* Conversely, "the performance of authorized acts in a prohibited manner" falls within the scope of employment. *Id.* "[A]n activity not explicitly within the employee's defined duties can nevertheless be related to the employee's duties if the work is in 'furtherance of the employer's business.'" *Id.* (quoting *Ramczik v. Winona Mach. & Foundry Co.*, 218 N.W. 545, 545 (Minn. 1928)). "But not every act which might benefit the employer is in the course and scope of employment." *Id.* "An employer may also extend the scope of employment by directing or requesting an employee to perform some act outside the usual scope of employment." *Id.* (citing *Weidenbach v. Miller*, 55 N.W.2d 289, 296 (Minn. 1952)).[3]

---

*Dawley* and *Wicken* at least to be consistent with applying a reasonable-foreseeability test to answer the direct-action question.

[3] Depending on the case, the course-and-scope-of-employment rules might be difficult to reconcile. For example, we know that an employee who engages in

A review of Minnesota cases shows that applying the coemployee-immunity exception usually entails a fact-intensive analysis. Every case the parties have cited, or I have found, adjudicates the exception's applicability on a record created through discovery. This is especially true of *Stringer*. The case involved review of a summary-judgment order, and the Minnesota Supreme Court was careful to describe the case's facts in considerable detail over roughly six pages in the reported version. 705 N.W.2d at 748–53. The same is true of other cases. *See, e.g.*, *Salguero v. Hernandez*, No. A24-0479, 2024 WL 4751163, at *1–2, *3–5 (Minn. Ct. App. Nov. 12, 2024) (reviewing summary-judgment order); *Thoemke v. Lamke*, No. A23-1949, 2024 WL 4113736, at *1–5 (Minn. Ct. App. Sept. 9, 2024) (same); *Olson v. Gausen*, No. A08-1756, 2009 WL 2151182, at *1–6 (Minn. Ct. App. July 21, 2009) (reviewing jury verdict and post-trial motions); *Otto v. Christianson*, No. A07-300, 2007 WL 2703143, at *1–4 (Minn. Ct. App. Sept. 18, 2007) (reviewing summary-judgment order); *Guess v. Priore*, No. A05-2467, 2006 WL 2474095, at *1–3 (Minn. Ct. App. Aug. 29, 2006) (same). The need for a factual record makes sense. Consider just the questions to be answered in resolving the scope-of-employment question. Answering whether an employee exceeded his authorization, violated an instruction or rule, or performed prohibited acts, *see Stringer*, 705 N.W.2d at 761, require some understanding

---

unauthorized acts, "including the violation of an instruction or a rule," acts outside the course and scope of employment. *Stringer*, 705 N.W.2d at 761. At the same time, an employee who performs "authorized acts in a prohibited manner" falls within the scope of employment. *Id.* What if an employee in the latter category acted "in a prohibited manner" by violating a supervisor's verbal instruction? Answering the fraudulent-joinder question here does not require resolving this or other possible ambiguities in Minnesota law.

9

of what directions an employee received and what policies or rules an employer maintained. Ordinarily, these matters are the subject of discovery.

C

Resolving all facts and ambiguities in Minnesota law in Ms. Klein's favor, is there arguably a reasonable basis for predicting that one or more of Mr. Stanback's named coemployees might not be granted immunity under Minn. Stat. § 176.061, subdiv. 5(e), as interpreted by the Minnesota Supreme Court? I think yes. Consider the three elements necessary to show coemployee immunity in reverse order, applying each to the Complaint's taken-as-true allegations, the supporting materials Ms. Klein filed, and plaintiff-friendly inferences reasonably drawn from those allegations and materials.

(1) It is arguably reasonable to predict that at least Mr. Bowser, Mr. Willson, and Mr. Ratliff acted outside the course and scope of their Menard employment in connection with Mr. Stanback's death. Mr. Bowser and Mr. Willson were Mr. Stanback's direct supervisors. Compl. ¶¶ 3, 5. Mr. Stanback's forklift training did not comply with OSHA regulations. *Id.* ¶ 33. Though Mr. Willson told law enforcement that Mr. Stanback had twenty hours of forklift training, *id.* ¶ 32, Mr. Bowser signed a document certifying Mr. Stanback's completion of forklift training just three days after Mr. Stanback's hiring date, *id.* ¶ 31. These allegations arguably support the conclusions that Mr. Stanback did not receive those training hours and that his training was inadequate. *Cf. id.* ¶ 43 (alleging other employees received improper and inadequate forklift training). And the forklift Mr. Stanback was assigned had a load limit well below the weight of the lumber he was directed to move. *Id.* ¶ 34. Especially considering the significance of OSHA regulations and

forklift load limits, it is reasonable to think Menard had instructions, rules, or policies mandating compliance in both areas, and that Mr. Bowser and Mr. Willson's actions may have violated one or more of these instructions or rules. *Stringer*, 705 N.W.2d at 761.

A similar analysis leads to the same conclusion with respect to Mr. Ratliff. Mr. Ratliff was an assistant manager. Compl. ¶ 4. He either stacked the lumber (that Mr. Stanback was directed to move), or directed that it be stacked, in a manner that was unsecure and unsafe. *Id.* ¶ 66; *see* ECF No. 17-2 at 3 (recording witness's observation that the stack was not safe). Prior to Mr. Stanback's death, a Menard employee reported that the lumber had been stacked in an "unsafe and unstable" manner. Compl. ¶ 38. The task list given to Mr. Stanback on the day of his death described the lumber as: "Unsafe stacking." *Id.* ¶ 18. Again, owing to the safety risks associated with large lumber stacks, it seems arguably reasonable to believe that Menard had instructions, rules, or policies regarding lumber stacking, and that Mr. Ratliff's actions may have violated one or more of these instructions or rules. *Stringer*, 705 N.W.2d at 761.

(2) It is arguably reasonable to predict that Mr. Bowser, Mr. Willson, and Mr. Ratliff took direct action toward, or directed another to take direct action toward, Mr. Stanback. With respect to Mr. Bowser and Mr. Willson, it is rationally debatable whether Mr. Stanback's death was a reasonably foreseeable result their failure to provide adequate forklift training. The same is true for Mr. Ratliff. Reasonable minds could find that the lumber's unsafe stacking—which the Complaint says Mr. Ratliff either did or directed— would pose a reasonably foreseeable risk of death or serious bodily injury to another employee assigned to move or work around the lumber, including Mr. Stanback.

11

(3) Finally, it is arguably reasonable to predict that Mr. Bowser, Mr. Willson, and Mr. Ratliff's actions might be found grossly negligent under Minnesota law. Paired with the extent of the alleged OSHA violations, Mr. Bowser's allegedly fabricated certification of Mr. Stanback's training and Mr. Willson's assertedly false description of it to law enforcement raise the question of what training Mr. Stanback received. And these same facts support the arguably reasonable conclusion that the forklift training Mr. Bowser and Mr. Willson provided to Mr. Stanback lacked even slight diligence or scant care. *Anderson*, 42 F.4th at 958. That the lumber's stacking resulted from gross negligence is a reasonably debatable inference from widespread knowledge of the lumber's obviously unsafe condition, *see* Compl. ¶¶ 18–19, 21, and from the sheer volume of lumber that fell on Mr. Stanback, *see id.* ¶ 34.[4]

This case's procedural stage seems like another remand-supporting consideration. All we have are the Complaint, the Complaint's taken-as-true allegations, Complaint-supporting materials filed by Ms. Klein, and arguably reasonable plaintiff-friendly inferences drawn from the Complaint's allegations and the accompanying materials. The Complaint does not address many particulars relevant to the coemployee exception, but it didn't have to. Minnesota is a notice-pleading jurisdiction. Minn. R. Civ. P. 8.01. And in Minnesota's courts "[a] claim is sufficient against a motion to dismiss if it is possible on

---

[4]  Resolution of the fraudulent-joinder question as to Mr. Bowser, Mr. Willson, and Mr. Ratliff means there is not complete diversity, and subject-matter jurisdiction is absent regardless of how fraudulent joinder is answered as to the other two coemployee defendants. It is therefore unnecessary to address the issue as to those two defendants.

12

any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014).[5] Applying fraudulent-joinder rules to Minnesota's coemployee exception thus requires greater emphasis on identifying arguably reasonable inferences that may be drawn from the Complaint's allegations. The number and nature of those inferences are not boundless. But until discovery becomes available that might narrow and establish relevant facts, that universe is comparatively extensive.

Menard advances sensible arguments supporting its position that the individual coemployee defendants were fraudulently joined, but these arguments ultimately are not persuasive. Menard argues that coemployees in Minnesota cannot be liable "for any claims related to the duty to provide a safe workplace and/or safe equipment." Mem. in Opp'n at 6. It is true that the Minnesota Supreme Court has "explained that the duty to provide employees with a safe workplace is a nondelegable duty held by the employer." *Stringer*, 705 N.W.2d at 756 (citing *Dawley*, 231 N.W.2d at 558). But this rule does not describe an expansive coemployee immunity in any case related to a safety violation. If it did, that would seem at odds with Minn. Stat. § 176.061, subdiv. 5(e). The statute includes no carve-out for safety-related injuries. Regardless, the court went on to explain:

---

[5]  To be clear, Minnesota's notice-pleading rule and dismissal standard explain the absence of more detailed allegations in the Complaint. That's all. Though some federal courts answer fraudulent joinder, at least in part, by comparing complaints against state dismissal standards, *see, e.g.*, *Hazelwood v. S Serv., LLC*, No. 3:19-cv-105-RGJ, 2020 WL 13543882, at *2 (W.D. Ky. Feb. 13, 2020), that seems unnecessary and perhaps improper. The Eighth Circuit's fraudulent-joinder rules establish the standard against which to assess Ms. Klein's claims against the coemployee defendants.

> In other words, when the alleged breach of duty falls within the workers' compensation compromise between employers and employees, the coemployee should not be held liable. To create personal liability for the coemployee, we require that "[t]he acts of negligence for which a co-employee may be held liable must be acts constituting direct negligence toward the plaintiff, tortious acts in which he participated, or which he specifically directed others to do."

*Id.* (quoting *Dawley*, 231 N.W.2d at 557). The coemployee exception thus may apply in cases implicating workplace safety.[6] The dividing line seems to fall between cases alleging general workplace safety violations on the one hand (where there is no coemployee liability), and cases alleging the violation of a personal duty on the other (where there may be coemployee liability). For fraudulent joinder's limited purposes, this case falls in the latter category.

Menard argues that the coemployee exception requires Ms. Klein to allege "direct contact" between each of the coemployee defendants and Mr. Stanback. This is not correct. *Stringer* does not identify "direct contact" as an element of the coemployee exception. *See id.* at 754, 757. The first element of the personal-duty inquiry asks whether an employee has "taken direct *action* toward or *have directed another* to have taken direct action toward the injured employee." *Id.* at 757. Direct "action" could describe many activities short of "contact." Regardless, if directing another to "take direct action" can be enough, direct contact cannot be essential.

---

[6]  If that weren't so, *Stringer*'s outcome would have been much easier and the court's opinion much shorter. The case dealt with a host of obvious workplace-safety issues.

14

Menard argues that the Complaint's allegations establish not that any coemployee defendant acted outside the course and scope of employment, but at most that every coemployee defendant "performed their jobs in an inadequate, unsafe, or unauthorized manner." Mem. in Opp'n at 16. This is not persuasive for two reasons. First, an employee who performs a job in an "unauthorized manner" arguably acts outside the course and scope of employment. Return to *Stringer*, this time with emphasis: "When an employee *engages in acts exceeding his authorization*, including the violation of an instruction or a rule, he is acting outside the course and scope of his employment." *Id.* at 761 (citing *Bartley*, 206 N.W.2d at 662, and *Lange*, 99 N.W.2d at 918). In other words, *Stringer* is reasonably understood to say that an employee who performs his job in an unauthorized manner acts outside the course and scope of his employment. Second, the argument rests on a fair description of the Complaint's course-and-scope-of-employment allegations, but it does not account for arguably reasonable inferences that may be drawn from those allegations.

The conclusion that Mr. Bowser, Mr. Willson, and Mr. Ratliff are not fraudulently joined means there is not subject-matter jurisdiction over this case. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806). The case will therefore be remanded pursuant to 28 U.S.C. § 1447(c).

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff's Motion to Remand [ECF No. 13] is **GRANTED**.

2. This case shall be **REMANDED** to Minnesota District Court, Fourth Judicial District (Hennepin County) pursuant to 28 U.S.C. § 1447(c).

Date: November 25, 2024                          s/ Eric C. Tostrud
                                                 Eric C. Tostrud
                                                 United States District Court